IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL CARY SNOWDEN and<br>BRENDA ASCENCIO, | § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| V. | § <br> § | No. 3:18-cv-1797-K-BN |
| WELLS FARGO BANK, N.A., ET AL., | § <br> § <br> § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade.

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") removed this action from the County Court at Law Number 4 of Dallas County, Texas, to the United States District Court for the Northern District of Texas, Dallas Division, under 28 U.S.C. §§ 1332, 1441 and 1446 and asserts that co-defendants D.R. Horton-Texas, Ltd.'s and DHI Mortgage Company, Ltd.'s citizenship should be disregarded for purposes of diversity because they are merely nominal parties that have been improperly joined.

At the Court's direction, *see* Dkt. No. 7, Plaintiffs Michael Cary Snowden and Brenda Ascencio filed a brief explaining whether, as Wells Fargo argues in its Notice of Removal, D.R. Horton-Texas, Ltd. and DHI Mortgage Company, Ltd. were improperly joined and, if so, should be dismissed from this lawsuit and whether subject matter jurisdiction therefore exists based on the complete diversity between any

remaining, properly joined parties, *see* Dkt. No. 8, and Wells Fargo filed a response brief, *see* Dkt. No. 9.

The undersigned concludes that, disregarding the improperly-joined defendants, complete diversity of citizenship exists between all properly-joined parties, and the Court has subject matter jurisdiction.

## Background

On June 7, 2018, Plaintiffs Michael Cary Snowden and Brenda Ascencio filed their Original Petition and Application for Temporary Restraining Order (the "Petition") in the County Court at Law Number 4 of Dallas County, Texas, styled *Michael Cary Snowden and Brenda Ascencio v. Wells Fargo Bank, N.A., et al.*, Cause No. CC-18-03015-D (the "State Court Action"). As Wells Fargo's Notice of Removal explains, "Plaintiffs seek to set aside the foreclosure sale of the real property located in Seagoville, Texas 75159 (the 'Property') based on their allegations that there is no recorded assignment of their deed of trust to Wells Fargo, that notices preceding foreclosure were not provided, that unspecified payments were not accounted for, and that Wells Fargo and that Wells Fargo demanded sums that were not owed to it"; "[b]ased on these allegations, Plaintiffs assert claims against Wells Fargo for violations of the Texas Debt Collection Act, the Texas Property Code, and breach of contract"; and "Plaintiff seeks monetary relief over $100,000." Dkt. No. 1 at 1-2.

Plaintiffs also allege a Breach of Fiduciary Duty claim against Defendants D.R. Horton-Texas, Ltd. ("Horton") and DHI Mortgage Company, Ltd. ("DHI"). *See* Dkt. No. 1-5 at 9. They allege that,

2

[u]pon information and belief, Plaintiffs were steered by Defendant [Horton] to Defendant DHI for the financing of their purchase of the Property, hence Defendants [Horton] and DHI had a fiduciary duty to see that Plaintiffs obtained a mortgage loan for Plaintiffs on the best possible price and terms, and to adequately disclose all financial benefits to [Horton] and/or DHI from such financing arrangement. On information and belief, Plaintiffs would show that all such benefits to [Horton] and/or DHI were not adequately disclosed to Plaintiffs, that the cost of credit to Plaintiffs was higher than otherwise would have been necessary had Plaintiffs not dealt with DHI in regard to the Loan. As a mortgage banker, DHI had an ongoing fiduciary duty to Plaintiffs to obtain a mortgage loan on the best price and terms possible. If in fact there was an assignment of the Loan directly or indirectly to Wells Fargo or a comparable entity, DHI breached that duty to Plaintiffs, in part in the apparent selection of Wells Fargo and/or a related entity as a mortgagee and/or mortgage servicer, and is liable to Plaintiffs for the damages incurred by Plaintiffs in the acts and omissions of each putative assignee in relation to the Loan, including the failure of Wells Fargo and any affiliated or successor parties to deal in good faith in attempting to modify and collect the Loan. At the time of the origination of the Loan or within a reasonable time thereafter, DHI was charged with knowledge of the pattern and practice of Wells Fargo's disregard of applicable law in the servicing of mortgage loans, and should not have attempted to assign ownership and/or servicing of the Loan to Wells Fargo, thereby jeopardizing Plaintiffs' ownership and use of the Property and which has now resulted in Plaintiffs' loss of title to the Property and has had Plaintiffs' possession and use of the Property jeopardized.

*Id.*

Wells Fargo removed the case to federal court based solely on diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Dkt. No. 1 at 2. It contends that complete diversity exists because "Plaintiff is a citizen of Texas and Wells Fargo is a citizen of South Dakota" and Defendants Horton's "and DHI's citizenship should be disregarded for purposes of diversity because they are merely nominal parties that have been improperly joined. *Id.* at 4. In support, Wells Fargo argues that

Plaintiffs assert a single claim for breach of fiduciary duty against Horton

3

and DHI, as the original lender and original beneficiary of the deed of trust. *See* Petition pp. 2, 7. Texas law does not recognize a fiduciary duty between a mortgagor and mortgagee. *See Adams v. U.S. Bank, N.A.*, No. 3:17-CV-723-B-BN, 2018 WL 2164517, at *3-4 (N.D. Tex. Mar. 6, 2018); *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990); *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302–03 (Tex. App. Amarillo 1988, writ denied). Consequently, Horton and DHI owed no fiduciary duty to Plaintiff. *See e.g.*, *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 677 (5th Cir. 2013), cert. denied, 134 S.Ct. 196 (2013); *Balch v. JP Morgan Chase Bank, NA*, 3:14-CV-3666-M, 2015 WL 1592386, at *6 (N.D. Tex. Apr. 8, 2015); *Choe v. Bank of Am.*, No. 3:13-cv-120-D, 2013 WL 3196051, at *6 (N.D. Tex. June 25, 2013) (noting that "[u]nder Texas law, there is no special relationship between a mortgagee and a mortgagor that gives rise to a duty of care.") (citations omitted). Plaintiffs have alleged no facts establishing a "special relationship" that could give rise to a fiduciary duty. *Balch*, 2015 WL 1592386 at *6. Because neither Horton nor DHI owed a fiduciary duty to Plaintiffs in connection with the loan transaction as a matter of law, Plaintiffs do not have even a theoretical possibility of recovery against Horton or DHI. Identical claims as those set forth against Horton and DHI have been dismissed. *See Adams*, 2018 WL 2164517, at *3-4.

Further, Plaintiffs cannot state a claim for breach of fiduciary duty against Horton or DHI because such claim is barred by the statute of limitations. Plaintiffs' claim for breach of fiduciary duty is governed by a four-year limitations period. TEX. CIV. PRAC. & REM. CODE § 16.004(5). Plaintiffs' allegations against Horton and DHI arise from the origination of Plaintiffs' loan, which occurred on April 30, 2012. *See* Petition at p. 2. Plaintiffs filed their Petition on June 7, 2018, well after the four year limitations period had expired. *See* Petition.

Consequently, Horton and DHI's citizenship should be disregarded for purposes of diversity because they have been improperly joined. Plaintiffs do not even raise the "theoretical possibility" that any causes of action could be maintained against Horton or DHI. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259-60 and n.8 (5th Cir. 1995) (citation omitted) (affirming denial of motion to remand, in part, on grounds that the plaintiff's complaint did not contain allegations which could support a claim against the non-diverse defendant); *see also Cantor*, 641 F. Supp. 2d at 611-12 (denying remand and disregarding the citizenship of the defendant upon a finding that no reasonable basis existed for plaintiff's recovery). A "federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). "Whether a party is [formal or] 'nominal' for removal purposes

depends on whether, in the absence of the [party], the Court can enter a final judgment consistent with equity and good conscience, which would not be in any way unfair or inequitable." *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 379 (5th Cir. 2006) (citations omitted).

Here, the Court would be able to "enter a final judgment consistent with equity and good conscience, which would not be in any way unfair or inequitable" in the absence of Horton and DHI. In light of the foregoing, no reasonable basis exists for Plaintiffs' recovery against Horton and DHI in this matter. Therefore, Horton and DHI are nominal parties that have been improperly joined and their citizenship should be disregarded for removal purposes. This case is properly in federal court. *See Great Plains Trust Co.*, 313 F.3d at 313 (where nondiverse defendant is fraudulently joined, case properly in federal court).

*Id.* at 6-7.

In response, Plaintiffs assert:

1. **Plaintiffs' Allegations Are Made in Good Faith.** In Paragraph 9 of their Original Petition, Plaintiffs have alleged that Horton steered Plaintiffs to use Horton's affiliate DHI as their mortgage broker to originate the Loan when Plaintiffs purchased the Property from Horton. DHI is a Texas limited partnership which appears to be affiliated and under common control with Horton, which is also a Texas limited partnership, and thus financial benefit to DHI would accrue to the benefit of Horton and vice versa. Both DHI and Horton have general partners located in the same suite 500 at 301 Commerce Street, Fort Worth, Texas 76102.

2. **Essential Facts.** Plaintiffs believe that they will be able to demonstrate that the total cost of credit from DHI was greater than Plaintiffs otherwise could have obtained, and that fees and a rate were charged to Plaintiffs in such a manner as to disguise the true cost of the Loan to Plaintiffs, inducing Plaintiffs to believe they were getting the Loan at a lower cost than they actually were. Plaintiffs were induced by Horton and DHI to believe that DHI would secure financing for Plaintiffs at a lower cost to Plaintiffs than would otherwise be available, when the reverse was true. The Loan was made to Plaintiffs by DHI on April 30, 2012, just after the well-publicized Consent Judgment of March 12, 2012 (see below) affecting Wells Fargo, and which widely publicized the mortgage servicing misbehavior of Wells Fargo that resulted in borrowers being foreclosed or their homes being jeopardized with needless foreclosure-related activity and costs.

3. **Fiduciary Duty Claims.** Plaintiffs argue that Horton, having

steered Plaintiffs to DHI, had a fiduciary duty to Plaintiffs to see that Plaintiffs obtained a loan on the best pricing and terms possible, but that Horton and DHI actually sought to maximize the financial benefit to themselves. In Texas, despite the absence of a statutory duty, a loan broker and lender can still have a fiduciary duty to a borrower. *Kelly v. Gaines*, 181 S.W.3d 394, 414 (Tex. App. – Waco, 2005). Under the standard enunciated in *Kelly* and the cases cited therein, a fiduciary duty may reasonably be found from the dealings of the borrower and the loan broker (and reasonably, any party acting in concert with the broker to achieve the broker's aims). DHI was bound to seek the best terms possible for Plaintiffs, and to fully disclose and explain all costs and benefits to Plaintiffs of the possible transactions. Once DHI became the lender for the eventual transaction, and Plaintiffs were directly or indirectly paying origination fees, broker fees or a yield spread premium (sometimes known as a broker premium), DHI became central to the overall effort to cost Plaintiffs substantial monies over and above what Plaintiffs otherwise might have paid over the life of the Loan, but also to inadequately disclose the true nature and cost of the fees being paid directly and indirectly by Plaintiffs to DHI or affiliates. Under the standard enunciated in *Kelly*, the fiduciary's breach can rest not necessarily on what injury is done to the borrower, but may be measured as well in terms of the benefit to the fiduciaries, in the instant case with Horton and DHI. *Kelly*, at 414.

4. **Duty of Good Faith and Fair Dealing.** Under the *Kelly v. Gaines* standard, and the cases cited therein, Texas law is well-established that a fiduciary owes the utmost good faith and fair dealing in its dealings with its counterparty, in this case, the borrower Plaintiffs. Such duty should be applicable to DHI as the lender as well as to Horton, since both were involved in the structuring of the sale and financing transaction when Plaintiffs purchased the Property from Horton, the pricing of the loan and various fees, and both Horton and DHI had duties of disclosure as well as other duties to the Plaintiffs.

5. **DHI Should Have Known of Wells Fargo Misconduct.** DHI, a Texas limited partnership and affiliate of Horton (both entities having their primary offices in Fort Worth, Texas) is reasonably and necessarily a defendant in this matter, because DHI knew or reasonably should have known of the dangers to Plaintiffs of transferring ownership and/or servicing of the Loan to Wells Fargo Bank, N. A. The Consent Judgment agreed to on or about March 12, 2012 and entered April 4, 2012, in *United States of America, et al v. Bank of America Corp. et al*, in the United States District Court for the District of Columbia, wherein the State of Texas had joined as a party plaintiff through its attorney general, and Defendant Wells Fargo Bank, N. A. was included as a party defendant,

6

included lengthy loan servicing specifications in the Settlement Term Sheet to remedy multiple violations of law that had proceeded for years previously. In *Jones v. Wells Fargo*, 366 B.R. 584 (Bankr. E.D. La. 2007) and in subsequent rulings before and after appeal to the Fifth Circuit, a judge ordered Wells Fargo to pay $3.1 million in punitive damages over a single loan, citing Wells Fargo's servicing behavior as "highly reprehensible" and noting that "perhaps more disturbing is Wells Fargo's refusal to voluntarily correct its errors. It prefers to rely on the ignorance of borrowers or their inability to fund a challenge to its demands, rather than voluntarily relinquish gains obtained through improper accounting methods." *Jones v. Wells Fargo*, 06-1094, 2012 WL 1155715 (Bankr. E.D. La. Apr. 5, 2012). On October 9, 2012, the United States sued Wells Fargo under the False Claims Act in the Southern District of New York, alleging Wells Fargo defrauded the Federal Housing Administration back to May, 2001. In announcing the latter filing, then-United States Attorney Preet Bharara said Wells Fargo "has engaged in a long-standing and reckless trifecta of deficient training, deficient underwriting and deficient disclosure, all while relying on the convenient backstop of government insurance." There is a sufficient history of loan servicing misconduct by Wells Fargo to provide a reasonable basis for Plaintiffs' claims of breach of fiduciary duty under Texas common law that DHI should not have attempted to transfer servicing of the Plaintiffs' loan to Wells Fargo. To permit Horton and DHI to insulate themselves from the unlawful pattern of Wells Fargo's servicing behavior would work an injustice to Plaintiffs. Given the very public nature of Wells Fargo's servicing misconduct as addressed, inter alia, in the Consent Judgment agreed to on or about March 12, 2012 and entered April 4, 2012, in *United States of America, et al v. Bank of America Corp. et al*, Civil Action No. 12-0361 in the United States District Court for the District of Columbia, and elsewhere over the past two decades, DHI should have been aware of the pattern of such conduct. DHI's knowledge, in light of its duty to Plaintiffs, should mean that Plaintiffs can state good claims against DHI for breaching its duty to them. The Consent Judgment provides, on page 204 thereof:

> **H. Consumer Complaints.** Nothing in this Consent Judgment shall be deemed to interfere with existing consumer complaint resolution processes, and the Parties are free to bring consumer complaints to the attention of Servicer for resolution outside the monitoring process. In addition, Servicer will continue to respond in good faith to individual consumer complaints provided to it by State Attorneys General or State Financial Regulators in accordance with the routine and practice existing prior to the entry of this Consent Judgment, whether or not such complaints relate

7

to Covered Conduct released herein.

Thus, it was the apparent intention of the parties to the Consent Judgment, including Wells Fargo, that remedies of debtor consumers were not to be limited thereby. Even if there is not a direct right of enforcement of the Consent Judgment by debtors, it should certainly be a breach of contract for Wells Fargo to violate, or refuse to comply with, any statute, rule or regulation applicable to the loan, since the Deed of Trust contains plain language that such obligation is to be the ongoing duty of Wells Fargo. Thus, there should be no claim preclusion, and res judicata should not be a bar to Plaintiffs' claims being allowed to proceed. Discovery is necessary to determine whether the allegations are in fact true, since the Consent Judgment would clearly apply to the loan at issue because of the involvement of Wells Fargo, since "Texas common law recognizes and allows both general and special damages as a recovery for acts of fraud or deceit." *Meyers v. Moody*, 693 F.2d 1196, 1212 (5th Cir. 1982). Plaintiffs could adequately plead claims cognizable by this Court.

6. **Bases for Remand.** The substantive bases for remand are still as set forth in 28 U.S.C. §1367(c)(1), (2) and (4), which permit this Court to decline to exercise supplemental jurisdiction over the Texas statutory and common law claims of Plaintiffs. The substantive bases for the remand are (a) Texas law claims not only predominate, but the case involves exclusively claims under Texas law, without any federal claim and (b) there is not complete diversity of parties as required by 28 U.S.C. §§1446(b), 1332(a) and §1367(c)(1), (2) and (4), all of which permit this Court to decline to exercise supplemental jurisdiction over the Texas statutory and common law claims of Plaintiffs.

7. **Presumptions Regarding Removal and Remand.** Doubts as to qualification for removal are resolved against the removing defendant. *Gutierrez v. Flores*, 543 F.3d 248 (5th Cir. 2008). The Court must strictly construe the removal statutes in favor of remand and against removal. *Bosky v. Kroger Tex., LP*, 28 F. 3d 208, 211 (5th Cir. 2002).

8. **There is No Complete Diversity.** The removing Defendants have removed this case based on complete diversity of parties, 28 U.S.C. §§1332 and 1441(b), but there is not complete diversity, because DHI and Horton have their primary center of operations in the Fort Worth in Tarrant County, in the Northern District of Texas and share a headquarters office address of 301 Commerce Street, Suite 500, Fort Worth, Texas 76102. A Court of this District has held, in *Hill v. Fort Worth Star Telegram*, No. 4:11-CV-278-Y, fourth paragraph (N. D. Tex. October 17, 2011) (emphases supplied) that:

> ... in order to properly invoke diversity jurisdiction, a plaintiff must allege that the amount in controversy exceeds $75, 000 and that he is a citizen of one state while the defendants are citizens of

> another.[8] Complete diversity of citizenship is required; a district court cannot exercise diversity jurisdiction if the plaintiff shares the same state citizenship as any one of the defendants.[9] A corporation is deemed to be a citizen of the "State by which it has been incorporated and of the State where it has its principal place of business...."[10] The principal place of business is a corporation's "nerve center, " or the place where a corporations' officers direct, control, and coordinate the corporation's activities.[11]

Defendants DHI and Horton and their general partners and ultimate parent are headquartered in the Northern District and have the heart of their operations here, of all of which the Plaintiffs ask the Court to take judicial notice.

   9. **Plaintiffs' Claims Involve Only Texas Law.** Plaintiffs' claims involve exclusively Texas law, and raise one or more novel or complex issues. There is not yet, for example, a substantial body of case law applying the principles within the fiduciary duty that DHI owed to Plaintiffs or the duty that Horton owed to Plaintiffs when it steered them to DHI.

   10. **Leave to Replead if Necessary** Should the proper statement of any claim of Plaintiffs against any Defendant require a more detailed pleading, Plaintiffs would ask that the Court grant such repleading and that the Court would entertain any further appropriate request for such leave.

*Id.* at

   Wells Fargo replies that

   Plaintiffs have not presented any credible challenge to this Court's jurisdiction over this action that would warrant remand. Contrary to Plaintiffs' arguments, D.R. Horton – Texas, Ltd. ("Horton") and DHI Mortgage Company, Ltd. ("DHI") are nominal parties that have been improperly joined. Plaintiffs assert a single claim for breach of fiduciary duty against Horton and DHI. Texas law is clear that a mortgagor and mortgagee do not have a fiduciary relationship nor does a fiduciary duty exist between a builder and a purchaser in a case such as Plaintiffs. Further, the breach of fiduciary duty claim is time-barred. Thus, Horton and DHI are nominal parties that have been fraudulently joined. The Court should retain its subject matter jurisdiction over this action.
....
   On June 7, 2018, Plaintiffs filed their Original Petition and Application for Temporary Restraining Order (the "Complaint") in the County Court at Law No. 4 of Dallas County, Texas in an action styled:

9

*Michael Cary Snowden and Brenda Ascencio v. Wells Fargo Bank, N.A., et al.*, Cause No. CC-18-03015-D (the "State Court Action"). Plaintiffs filed suit to set aside the foreclosure sale of the real property located at 3002 Highgate Drive, Seagoville, Texas 75159 (the "Property"). *See* Complaint ¶ 4. On April 30, 2012, Plaintiffs executed a note and deed of trust for the benefit of DHI ("Plaintiffs' Loan"), in order to finance the purchase of the Property by Plaintiffs from Horton. *Id.* at ¶¶ 4, 9. Plaintiffs' Loan was then assigned to Wells Fargo. [Wells Fargo requests that the Court take judicial notice of the publicly-recorded Assignment of Mortgage under FED. R. OF EVID. 201, which reflects that Wells Fargo in its individually capacity is the mortgagee/assignee of Plaintiff's deed of trust. A true and correct copy of the Assignment is attached hereto as Exhibit B to Wells Fargo's Motion to Dismiss and Brief in Support. (Doc. No. 5).

The sole claim that Plaintiffs assert against Horton and DHI is for breach of fiduciary duty arising out of the origination of Plaintiffs' Loan, which occurred on or about April 30, 2012. *Id.* ¶¶ 4, 9. On July 12, 2018, Wells Fargo removed the State Court Action to this Court pursuant to 28 U.S.C. § 1332. *See* Doc. No. 1. On July 13, 2018, the Court entered the Order Requiring Briefing on Improper Joinder. (Doc. No. 7.) On August 3, 2018, Plaintiffs filed their Brief, wherein they argue that Horton and DHI are not nominal parties because Plaintiffs have purportedly stated a claim against them for breach of fiduciary duty. *See* Brief, ¶ 3. As demonstrated herein, however, the Court may disregard the citizenship of Horton and DHI because of Plaintiffs' inability to state a claim against them.

....

Plaintiffs argue that complete diversity does not exist because Horton and DHI are Texas citizens that were not improperly joined because they purportedly breach a fiduciary duty. *See* Brief ¶ 8. However, no reasonable basis exists for recovery against either Horton or DHI in this matter.

....

Generally, Texas law does not recognize a fiduciary duty between a mortgagor and mortgagee. *See Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990); *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302-03 (Tex. App. Amarillo 1988, writ denied). Thus, DHI, as the originating lender, does not owe a fiduciary duty to Plaintiffs and Horton, the home builder that allegedly steered Plaintiffs to finance the Property with DHI, whose relationship to Plaintiffs is even more removed from that of a mortgagor/ mortgagee and was not even a party to Plaintiffs' Loan, owes no fiduciary duty to Plaintiffs. *See e.g., Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 677 (5th Cir. 2013), *cert.*

10

*denied*, 134 S.Ct. 196 (2013); *Balch v. JP Morgan Chase Bank, NA*, 3:14-CV-3666-M, 2015 WL 1592386, at *6 (N.D. Tex. Apr. 8, 2015); *Choe v. Bank of Am.*, No. 3:13-cv-120-D, 2013 WL 3196571, at *6 (N.D. Tex. June 25, 2013) (noting that "[u]nder Texas law, there is no special relationship between a mortgagee and a mortgagor that gives rise to a duty of care.") (citations omitted). The *Adams* case is instructive. In that case, the Northern District of Texas adopted Magistrate Judge Horan's recommendation denying a motion to remand in which a breach of fiduciary duty claim was asserted against a builder and originating lender, holding that the plaintiff in that case failed to state a claim for breach of fiduciary duty, and as a result, the non-diverse defendant was improperly joined and dismissed.... *Adams v. U.S. Bank, N.A.*, No. 3:17-CV-723-B-BN, 2018 WL 3084572, at *6-8 (N.D. Tex. June 29, 2017) (Horan, J.), *report and recommendation adopted*, No. 3:17-CV-723-B-BN, 2017 WL 3052491 (N.D. Tex. July 19, 2017). The same thorough and well-reasoned analysis that the Court applied in *Adams* should be applied in the instant case and the Court, like *Adams*, should determine that DHI and Horton were improperly joined and thus their citizenship should be disregarded for diversity purposes.

....

Plaintiffs' reliance on *Kelly v. Gaines*, 181 S.W.3d 394, 413-15 (Tex. Civ. App. – Waco 2005), *rev'd on other grounds*, 235 S.W.3d 179 (Tex. 2007) is misplaced. In *Kelly*, the Court found that a fiduciary relationship could exist between the parties because of an agreement in which the defendant agreed to act as the plaintiff's agent in securing a loan. *Id.* In that case, "[a] principal-agent relationship constitutes a fiduciary relationship as a matter of law." *Kelly*, 181 S.W.3d at 414 (citing cases). In contrast, a mortgage lender or servicer's relationship to a mortgagee is generally "'an arm's length business relationship.'" *Williams v. Fed. Nat. Mortg. Ass'n*, No. 2:11-cv-157-J, 2012 WL 443986 at *3 (N.D. Tex. Feb. 13, 2012) (quoting *McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 36 (Tex. Civ. App. – Houston [14th Dist.] 2005, pet. denied)). It is not a principal-agent relationship. Consequently, the *Kelly* case has no applicability here. Moreover, this Court recently rejected reliance on *Kelly* in a similar context in the *Adams* case, where the same counsel that represents Plaintiffs herein had twice unsuccessfully attempted to rely on the *Kelly* case.... *Adams v. U.S. Bank, N.A.*, No. 3:17-CV-723-B-BN, 2018 WL 216417, at *4-5 (N.D. Tex. Mar. 6, 2018) (Horan, J.), *report and rec. adopted*, No. 3:17-CV-723-B-BN, 2018 WL 2150957 (N.D. Tex. May 10, 2018). Plaintiffs have alleged no facts nor cited any authority in their Complaint that would give rise to a fiduciary duty between Horton, DHI, and Plaintiffs. *See generally* Complaint. Indeed, Plaintiffs have failed to allege any facts establishing a "special

relationship" that could give rise to a fiduciary duty. *Balch*, 2015 WL 1592386 at *6. Because neither Horton nor DHI owed a fiduciary duty to Plaintiffs in connection with the loan transaction, Plaintiffs do not have even a theoretical possibility of recovery against Horton or DHI.
....

Plaintiffs' claim for breach of fiduciary duty is governed by a four-year limitations period. TEX. CIV. PRAC. & REM. CODE § 16.004(5). Plaintiffs' allegations against Horton and DHI arise from the origination of Plaintiffs' Loan, which occurred in April 2012. Complaint ¶¶ 4, 9. Plaintiffs filed their Petition on June 7, 2018, after the four year limitations period had expired. *See* Doc. 1, its Exhibit E. Therefore, Plaintiffs' breach of fiduciary duty claim against both Horton and DHI is time-barred. Consequently, Horton and DHI's citizenship should be disregarded for purposes of diversity because they have been improperly joined.
....

"Jurisdictional facts are determined at the time of removal, and consequently postremoval events do not affect that properly established jurisdiction." *Smitherman v. Bayview Loan Servicing, LLC*, No. 16-20560, 2018 WL 1176480 at *5 (5th Cir. Mar. 6, 2018) (alterations and quotation marks omitted)); *see also Bissonet Invs. v. Quinlan*, 320 F.3d 520, 525 (5th Cir. 2003); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The rationale for determining removal jurisdiction on the basis of claims in the state court complaint as it exists at the time of removal is obvious." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). "Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action . . . all at considerable expense and delay to the parties and the state and federal courts involved." *Id.* "Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation." *Id.* In their Brief, Plaintiffs improperly attempt to raise new allegations and claims for the very first time that are not asserted in their Complaint. Plaintiffs allege for the first time that Horton and DHI owed a duty of good faith and fair dealing to Plaintiffs and appear to assert new claims based on a violation of a consent judgment. Brief, pp. 2, 3-5. Because jurisdictional facts and subject matter jurisdiction are determined at the time of removal, such new allegations and claims are completely irrelevant to whether this Court has subject matter jurisdiction over the claims asserted in the Complaint and should not be considered by the Court. Regardless, any

> duty of good faith and fair dealing claim fails for the same reasons as the breach of fiduciary duty claim and Plaintiffs lack standing to bring any claims based on any violation of the consent judgment. *See Choe v. Bank of Am., N.A.*, No. 3:13-CV-0120-D, 2013 WL 3196571, at *4 (N.D. Tex. June 25, 2013).

Dkt. No. 9 at 1-10 (footnote omitted).

## Legal Standards

Federal courts have an independent duty to examine their own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").

A federal court's jurisdiction is limited, and federal courts generally may hear a case of this nature only if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332.

A defendant may remove an action filed in state court to federal court on the basis of diversity if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001).

28 U.S.C. § 1332 creates federal subject matter jurisdiction where diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), (b). "A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). To establish subject matter jurisdiction, "the party asserting federal jurisdiction must distinctly and

13

affirmatively allege [ ] the citizenship of the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (citation and internal quotations omitted). And, if no amount of damages was alleged in the state court petition, a removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. § 1446(c)(2); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc). "In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts. If, however, the foreign defendant fails to prove the joinder improper, then diversity is not complete, the diverse defendant is not entitled to remove, and remand is mandated." *Id.* at 575.

A defendant alleging that a non-diverse defendant is improperly joined has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529,

532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Where there is no dispute or allegation of actual fraud concerning the fact that both the plaintiff and a defendant are citizens of the same state, the sole concern is whether, as a matter of law, the plaintiff can establish a valid state-law cause of action against the non-diverse defendant. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). "To establish improper joinder under the second prong, the defendant must demonstrate 'that there is no possibility of recovery' against the in-state or non-diverse defendant, 'which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or non-diverse] defendant.'" *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017) (quoting *Smallwood*, 385 F.3d at 573). "A mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 n.9 (internal quotation marks omitted).

The United States Court of Appeals for the Fifth Circuit has further instructed that, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* at 573. "The burden on the removing party is to prove that the joinder of the in-state parties was improper – that is, to show that sham defendants were added to defeat jurisdiction," such that "[a] showing that the plaintiff's case is barred as to all defendants is not sufficient" and, "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally

dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Id.* at 575; *see also id.* at 574 (explaining that, "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit," and that, "[i]n such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper," and, "[i]n such circumstance, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such").

Ordinarily, "to determine whether an in-state or non-diverse defendant was properly joined, '[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the ... defendant.'" *Alviar*, 854 F.3d at 289 (quoting *Smallwood*, 385 F.3d at 573). In performing this analysis, a court must consider the allegations in the state-court petition at the time of removal. *See id.* at 290 n.1.

If, however, the plaintiff has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). But the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant" and that "any piercing of the pleadings should not entail substantial hearings." *Smallwood*, 385 F.3d at 573-74. "Attempting to proceed beyond

16

this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the [non-diverse] defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574. Further, "[i]n this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Id.*

In making the improper-joinder determination, the Court will "evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff" and "any ambiguities of state law in the plaintiff's favor" and "then examine relevant state law and resolve all uncertainties in favor of the nonremoving party." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (internal quotation marks omitted); *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 260 n.8, 264 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205–06 (5th Cir. 1983)). And "[p]ost-removal filings may not be considered ... when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs*, 181 F.3d at 700.

The Fifth Circuit recently clarified that the federal pleading standard, not a state pleading standard, applies to determine whether a non-diverse defendant has been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016) (abrogating three *post-Smallwood* Fifth

17

Circuit cases applying a state pleading standard instead the federal pleading standard). The "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiffs' allegations as true, it

is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. §135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for

determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

As an initial matter, Well Fargo is correct that Plaintiffs cannot inject new allegations or theories or claims into the mix as part of the Court's improper joinder analysis. *See Alviar*, 854 F.3d at 290 n.1; *Griggs*, 181 F.3d at 700. And any post-removal amendments or repleading, as Plaintiffs request in the alternative, would likewise have no effect on the required analysis "on the basis of claims in the state court complaint as it exists at the time of removal." *Cavallini*, 44 F.3d at 264. Plaintiffs' state-court petition did not allege that Horton and DHI owed a duty of good

20

faith and fair dealing to Plaintiffs or assert claims based on a violation of a consent judgment, and so those new allegations cannot properly be considered in analyzing Wells Fargo's improper joinder allegations.

Turning to that analysis, as explained above, in their Petition filed in state court, Plaintiffs alleged only one cause of action against each of Horton and DHI: breach of fiduciary duty. Plaintiffs allege that "the Property was sold and conveyed to Plaintiffs by D.R. Horton - Texas, Ltd."; that Horton steered them to DHI "for the financing of their purchase of the Property"; and that therefore Horton "and DHI had a fiduciary duty to see that Plaintiffs obtained a mortgage loan for Plaintiffs on the best possible price and terms, and to adequately disclose all financial benefits to [Horton] and/or DHI from such financing arrangement." Dkt. No. 1-5 at 3, 9. Plaintiffs also allege that, "[a]s a mortgage banker, DHI had an ongoing fiduciary duty to Plaintiffs to obtain a mortgage loan on the best price and terms possible." *Id.* at 9.

Assuming (as the parties do) that Horton and DHI are Texas citizens, the issue, then, is whether Plaintiffs properly state a claim against either Horton or DHI on this basis.

In Texas, the elements for a claim of breach of fiduciary duty are: (1) a fiduciary relationship between Plaintiffs and the defendant, (2) a breach by the defendant of its fiduciary duty to Plaintiffs, and (3) an injury to Plaintiffs or a benefit to the defendant as a result of the breach. *See Anderton v. Cawley*, 378 S.W.3d 38,51 (Tex. App. – Dallas 2012, no pet.).

As in *Adams*, Plaintiffs fail to state a claim here against either Horton or DHI

21

because they cannot establish the first element – that they and either Horton or DHI are in a fiduciary relationship. *See Gergan v. Kelly*, 355 S.W.3d 223, 227 (Tex. App. – Houston [1st Dist.] 2011, no pet.). Accordingly, there is no reasonable basis for the Court to predict that Plaintiffs might be able to recover against either Horton or DHI on their alleged breach of fiduciary duty claim.

The analysis in *Adams* applies equally well here. As the Court explained in concluding that the home builder sued in *Adams* was improperly joined through a breach of fiduciary duty claim:

> Texas recognizes two types of fiduciary relationships. *See id*. "The first is a formal fiduciary relationship," such as "the relationship of an attorney-client, principal-agent, or trustee-beneficiary relationship." *Id*. The second is an informal fiduciary relationship – that is, a confidential relationship "where one person trusts and relies on another, whether the relation is a moral, social, domestic or purely personal one."*Id*. The Texas Supreme Court has recognized that "confidential relationships may arise not only from the technical fiduciary relationships such as attorney-client, trustee-cestui que trust, partner and partner, etc. – which as a matter of law are relationships of trust and confidence – but may arise informally from moral, social, domestic or purely personal relationships." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (1962). "The existence of the fiduciary relationship is to be determined for the actualities of the relationship between the parties involved." *Id*.
>
> Ms. Adams cannot establish that she and Cheldan have a formal relationship that triggers a fiduciary duty. Texas does not appear to recognize a relationship between a home builder who refers home buyers to a mortgagee and a home buyer as one of the relationships that create a fiduciary duty. *See* Dkt. No. 8 at 3 (Ms. Adams acknowledging that she has not identified a "substantial body of case law" concerning any purported fiduciary relationship between a home builder who refers a home seller to a mortgagee). After all, as U.S. Bank correctly notes, Texas law generally does not recognize a fiduciary duty between a mortgagor and mortgagee. *See* Dkt. No. 18 at 4 (citing *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990)). And the relationship between a home builder who merely refers a home buyer to a mortgagee is even more removed.

Ms. Adams also cannot establish that Cheldan owes her a fiduciary duty by virtue of their informal relationship.

"A fiduciary relationship is an extraordinary one and will not be lightly created." *Gergain*, 355 S.W.3d at 228. "[A] person is justified in placing confidence in the belief that another will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship as well as [a] personal friendship." *Id*. An informal relationship requires proof that a special relationship was created, therefore causing Ms. Adams to be guided by the judgment or advice of another. *See id*. In order for a special relationship to exist the parties must have had a relationship of trust and confidence that existed prior and apart from the agreement in the suit. *See id*. at 229.

Ms. Adams alleges that Cheldan steered her to work with Guild to finance the Property. But she fails to provide any explanation in her State Court Petition or in her brief as to why she was "justified in placing confidence in the belief that" Cheldan would act in her best interest in the first place. She has not suggested that she allowed Cheldan to "steer" her toward a particular financing out of some long-standing personal or business relationship. *Cf. Lee v. Hasson*, 286 S.W.3d 1, 15 (Tex. App. – Houston 2007, pet. denied) ("Hasson and Lee shared a long-standing business relationship and a close personal family relationship well beyond casual friendship" and where "Lee relied on Hasson for moral, financial, and personal guidance or support. Moreover, their relationship began in 1993 and therefore predated their agreements by approximately six years."); *Flanary v. Mills*, 150 S.W.3d 785, 794 (Tex. App. – Austin 2004, pet. denied) (finding that a fiduciary relationship existed where the parties were related and had a long-standing working relationship).

Nor is there any other indication that Ms. Adams had some objective reason to believe that she would be justified in placing her confidence in Cheldan to act in her best interest. This failure is especially notable since, in her motion to remand, Ms. Adams appears to acknowledge that she has not identified case law suggesting that a fiduciary relationship between a home builder and a home owner exists. *See* Dkt. No. 7 at 3 (Ms. Adams acknowledging that "[t]here is not yet ... a substantial body of case law applying the principles within the fiduciary duties that Cheldan ... owed to Plaintiff").

The State Court Petition, at most, suggests that Ms. Adams may have had some subjective belief that she could trust Cheldan based on its status as a home builder. But, as explained above, the home builder-home buyer relationship is not a formal relationship that independently creates a fiduciary duty. And Ms. Adams's "subjective trust and feelings of trust and confidence [are] not ... enough to create a fiduciary relationship"

either. *Gergain* 355 S.W.3d at 229.

      Because Ms. Adams is unable to establish the first element – the existence of a fiduciary relationship between her and Cheldan – the Court should conclude that U.S. Bank has met its heavy burden of establishing that Ms. Adams is unable "to establish a cause of action against the non-diverse party in state court." *Crockett*,436 F.3d at 532.

*Adams v. U.S. Bank, N.A.*, No. 3:17-cv-723-B-BN, 2017 WL 3084572, at *6-*8 (N.D. Tex. June 29, 2017), *rec. adopted*, 2017 WL 3052491 (N.D. Tex. July 19, 2017).

Based on this same analysis, Texas does not appear to recognize a relationship between a home builder or seller like Horton – even one that refers home buyers to a mortgagee – and a home buyer as one of the relationships that create a fiduciary duty. And, as in *Adams*, Plaintiff cannot establish that Horton owes them a fiduciary duty by virtue of their informal relationship, and Plaintiffs fail to provide any explanation in their state court Petition or in their response brief as to why they were justified in placing confidence in the belief that Horton would act in their best interest in the first place and have not provided any other indication that they had some objective reason to believe that they would be justified in placing confidence in Horton to do so. This is so even if the Court considers the expanded allegations in support of their breach of fiduciary duty claim that Plaintiffs raise in their response brief. *See* Dkt. No. 8 at 2 ("Plaintiffs argue that Horton, having steered Plaintiffs to DHI, had a fiduciary duty to Plaintiffs to see that Plaintiffs obtained a loan on the best pricing and terms possible...."). Wells Fargo has met its heavy burden of establishing that Plaintiffs are unable to establish a cause of action against Horton in state court for breach of fiduciary duty because they are unable to establish the first element – the existence of

a fiduciary relationship between them and Horton.

Likewise, as the Court explained in concluding that the plaintiff's breach of fiduciary duty claim against the mortgage lender in *Adams* should be dismissed with prejudice under Rule 12(b)(6),

> Texas courts have consistently held that the mortgagor-mortgagee relationship is not a special relationship that generally gives rise to a fiduciary duty. *See Lovell v. W. Nat. Life Ins. Co.,* 754 S.W.2d 298 (Tex. App. – Amarillo 1988, writ denied); *accord Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith.") (citing *English v. Fischer*, 660 S.W.2d 621, 622 (Tex. 1983)). The same is also true of a loan servicer and mortgagee. *See Williams v. Fed. Nat. Mortg. Ass'n*, No. 2:11-cv-157-J, 2012 WL 443986 at *3 (N.D. Tex. Feb. 13, 2012) (citing *Hinton v. Federal Nat. 7 Mortg. Ass'n*, 945 F. Supp. 1052, 1060 (S.D. Tex. 1996), *aff'd* 137 F.3d 1150 (5th Cir. 1998)). These courts reason that, "'[g]enerally, the relationship between a borrower and a lender [or loan servicer] is an arm's length business relationship in which both parties are looking out for their own interests.'" *Id.* (quoting *McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 36 (Tex. Civ. App. – Houston [14th Dist.] 2005, pet. denied).
>
> As with Guild's previous motion to dismiss, Ms. Adams's response here appears to ask the Court to disregard the line of cases cited above in light of a case in which a "court found that it was reasonable for the trier of fact to find that a duty of good faith and fair dealing, and even a fiduciary relationship, between a loan broker and a loan borrower." *See* Dkt. No. 47 at 1 (referring to *Kelly v. Gaines*, 181 S.W.3d 394, 413-15 (Tex. Civ. App. – Waco 2005), *rev'd on other grounds*, 235 S.W.3d 179 (Tex. 2007)).
>
> But Ms. Adams made – and the undersigned rejected – that argument in considering Guild's previous motion to dismiss. *See* Dkt. No. 37 at 11. As the undersigned explained, *Kelly v. Gaines*, the case on which Ms. Adam relies, is distinguishable from this case. In *Kelly*, the court found that a jury could find that a fiduciary relationship between the parties existed in light of an agreement in which the defendant agreed to act as the plaintiff's agent in securing a loan. And, as the *Kelly* court explained, "[a] principal-agent relationship constitutes a fiduciary relationship as a matter of law." *Kelly*, 181 S.W.3d at 414 (citing cases). In contrast, a mortgage lender or servicer's relationship to a mortgagee is generally "'an arm's length business relationship.'" *Williams*, 2012 WL

443986 at *3 (quoting *McKinney Ltd.*, 192 S.W.3d at 36).

Courts have therefore only entertained the notion that a mortgage lender or service might owe a mortgagee a fiduciary duty where its relationship to the mortgagee was such that the mortgagee could reasonably expect the lender or service to act in his or her best interest. *See Gergan*, 355 S.W.3d at 228 (requiring proof that special relationship was created, therefore causing the plaintiff to be guided by the judgment or advice of another). "'[A] person is justified in placing confidence in the belief that another will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship as well as personal friendship.'" *Id.* (quoting *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. – Houston [14th Dist.] 1997, pet. denied)). The parties' special relationship must also have existed prior to and apart from the agreement in the suit. *See id.* at 229.

As in her State Court Petition, Ms. Adams alleges in her Second Amended Complaint that Guild breached a fiduciary duty to her by either assigning the Loan to U.S. Bank or selecting U.S. Bank as the mortgage service even though it knew of U.S. Bank's alleged issue with complying with the law. But Ms. Adams again fails to provide any explanation in her complaint or in her brief as to why she was "justified in believing that ... Guild had a fiduciary duty to [Ms. Adams] in the origination [and servicing] of the loan at issue" and that Guild would act in her best interest in the first place. Dkt. No. 47 at 1. Ms. Adams has not suggested that she had some long-standing relationship with Guild – separate from its relationship to the Property. *Compare Lee v. Hasson*, 286 S.W.3d 1, 15 (Tex. App. – Houston 2007, pet. denied) ("Hasson and Lee shared a long-standing business relationship and a close personal family relationship well beyond casual friendship" and "Lee relied on Hasson for moral, financial, and personal guidance or support. Moreover, their relationship began in 1993 and therefore predated their agreements by approximately six years."); *Flanary v. Mills*, 150 S.W.3d 785, 794 (Tex. App. – Austin 2004, pet. denied) (finding that a fiduciary relationship existed where the parties were related and had a long-standing working relationship).

Nor is there any other indication in her pleadings that Ms. Adams had some objective reason to believe that she would be justified in placing her confidence in Guild or its employees to act in her best interest. Ms. Adams's Second Amended Complaint, like her State Court Petition, suggests, at most, that Ms. Adams may have had some subjective, unspecified belief that she could trust Guild. But her "subjective trust and feelings of trust and confidence [are] not ... enough to create a fiduciary relationship." *Gergan* 355 S.W.3d at 229.

Ms. Adams's claim for breach of fiduciary duty should be

dismissed. And because the Court previously granted Ms. Adams an opportunity to replead her breach of fiduciary duty claim against Guild, the dismissal should be with prejudice.

*Adams v. U.S. Bank, N.A.*, No. 3:17-cv-723-B-BN, 2018 WL 2164520, at *4-*5 (N.D. Tex. Mar, 6, 2018), *rec. adopted*, 2018 WL 2150957 (N.D. Tex. May 10, 2018).

This same analysis applies equally to support the conclusion that Wells Fargo has met its heavy burden of establishing that Plaintiffs are unable to establish a cause of action against DHI in state court for breach of fiduciary duty because they are unable to establish the first element – the existence of a fiduciary relationship between them and DHI. And, again, this is so even if the Court considers the expanded allegations in support of their breach of fiduciary duty claim that Plaintiffs raise in their response brief. *See* Dkt. No. 8 at 2-3 ("DHI was bound to seek the best terms possible for Plaintiffs, and to fully disclose and explain all costs and benefits to Plaintiffs of the possible transactions. Once DHI became the lender for the eventual transaction, and Plaintiffs were directly or indirectly paying origination fees, broker fees or a yield spread premium (sometimes known as a broker premium), DHI became central to the overall effort to cost Plaintiffs substantial monies over and above what Plaintiffs otherwise might have paid over the life of the Loan, but also to inadequately disclose the true nature and cost of the fees being paid directly and indirectly by Plaintiffs to DHI or affiliates."). As Wells Fargo correctly explains, Plaintiffs' reliance on *Kelly v. Gaines* is misplaced for the same reasons that Ms. Adams's was.

The Court should therefore find that Horton and DHI have been improperly joined and that subject matter jurisdiction exists based on the complete diversity

27

between the remaining, properly joined parties. *See Smallwood*, 385 F.3d at 575 ("In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts."). And, because once the Court determines that Horton and DHI were improperly joined and thereby effectively dismisses Plaintiffs' claim against Horton and DHI without prejudice, the Court should further order that Plaintiffs' claim against D.R. Horton-Texas, Ltd. and DHI Mortgage Company, Ltd. without prejudice. *See Alviar*, 854 F.3d at 291-92.

## Recommendation

For the reasons explained above, the undersigned concludes that Defendants D.R. Horton-Texas, Ltd. and DHI Mortgage Company, Ltd. were improperly joined and should be dismissed without prejudice; that complete diversity of citizenship exists; and that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 27, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE